THE UNITED STATES

*vs*.

CATESBY AP. ROGERS JONES

AT LAW.            DECIDED JUNE 4, 1854.

### On a case stated.

1. Money received by a naval officer for a special designated purpose, and accompanied by instructions from the Secretary of the Navy, is not covered by the specified allowances enumerated and prohibited in Section 2, of the Act of Congress of March 3rd, 1835.

2. The order of the Secretary of the Navy ·to the defendant to apply a sum of money to the payment of the expenses attending the injuries by him while in Paris on special duty, is obligatory on the accounting officers of the Treasury.

3. An order issued by the head of one of the departments of the government, for the payment of an account authorized by him, cannot be controlled by the subordinates of another department, such an order is binding on all the officers by whom the account is to be audited.

P. BARTON KEY, Esq., for the United States.

C. L. JONES and J. M. CARLISLE, Esqs., for Lieut. Jones.

It appears that some years back Lieut. Jones was absent on leave in Paris, and while standing on the Boulevard during one of the *emeutes* which occurred at the time, was wounded by a stray bullet, fired by one of the conflicting parties, and severely injured. On being taken home, he was attended by a French surgeon. The expenses of medical attendance during his sickness, and subsequent to his recovery amounting to $1000. This he claimed to be reimbursed by the United States, having been wounded while in their service, and in a foreign port. His sojourn at Paris, having been an absence on leave, and as the government felt some hesitation as to whether the case came under the provisions of the act, the suit was brought before the Judges of the Circuit Court to have their opinion as to the validity of the claim.

Case agreed:

This is an action for money had and received, docketed by consent, to try the right of the plaintiff, to recover from the defendant the sum of $1089 upon the facts hereinafter set forth, which are agreed to be taken, as if proven, to wit:

The defendant is, and was at the time and times hereinafter referred to, a lieutenant in the Navy of the United States.

Being at Paris, in France, by the authority and permission of the United States Government, that is, he was on leave of absence, to wit: on the 4th day of December, in the year 1851, he was there severely and dangerously wounded during the *emeute*, or revolutionary outbreak, which resulted in the establishment of the Imperial Government, without any act or default of his touching his rights or duties as such lieutenant as aforesaid.

On the 16th day of August, 1852, the Secretary of the Navy of the United States, to whom the facts aforesaid, touching the wounding of the defendant and his actual condition had been duly and fully reported, (he, the said defendant, being then and there on special duty, as appears by letter of July 17th, 1852, prout the same hereto annexed, for the purpose of collecting information in relation to the Steam Marine of France,) in consideration thereof, issued and transmitted to Messrs. Barring Brothers & Co., agents of the United States Navy Department, at London, a letter of credit, bearing date August 16th, 1852, and an order to the defendant of the same date, on receipt of the last named (order) the said Lieutenant Jones drew upon the said Barring Brothers & Co. for the sum of $1000, which, with the difference of exchange, &c., is the sum claimed by the United States in this action and none other.

It is agreed that the said sum was fully and necessarily exhausted in *discharging the expenses attending the injuries aforesaid*, received by the said defendant, in Paris as aforesaid; and that the French Government have not "*granted reclamation for the injuries sustained*" by the said defendant as aforesaid.

It is further agreed that the said order of the Secretary

of the Navy, and the said letter of credit on the said Barring Brothers and Co. were not, nor was either of them at any time revoked or countermanded; but that the accounting officers of the Treasury have charged the amount so as aforesaid, drawn by the said Lieutenant Jones, against him on his pay account, and have refused to recognize the authority of the Secretary of the Navy in the premises.

If the Court shall be of opinion that the United States can recover the amount aforesaid from the said Lieutenant Jones upon the facts aforesaid, then judgment is to be entered against him for $1089 and costs. Otherwise, judgment for the defendant with costs.

Messrs. Carlisle and Jones for the defendant.

Mr. Phil. Barton Key, United States Attorney, for the United States.

The following is the opinion of Judge Morsell:

This case comes before the Court on the following agreed statement of facts, by which it is contended that it appears the defendant, without lawful authority, has received and retains moneys belonging to the United States to the amount of $1089, and which he is liable for in this action. The subject of the claim has been acted upon by the accounting officers of the Treasury, who have refused to recognize the authority of the Secretary of the Navy in the premises, upon the ground that the defendant was at the time a Lieutenant in the Navy of the United States, and the injury, on account of which the medical services were rendered, occurred while he was abroad on leave of absence, and therefore the case is within the prohibition of the 2d Section of the Act of Congress of 1835, March the 3d, Ch. 27, which is in these words: "That no allowance shall hereafter be made to any officer in the Naval Service of the United States for drawing bills, for receiving or disbursing money, or transacting any business for the government of the United States, nor shall be allowed servants, or pay for servants or clothing, or rations for them, or pay for the same, nor shall any allowance be made to him for rent of quarters, or to pay rent for furniture, or for lights, or fuel, or transporting baggage. It is hereby expressly declared that the yearly allowance pro-

vided in this Act is all the pay, compensation and allowance that shall be received under any circumstances whatever, by any such officer or person, except for traveling expenses when under orders, for which ten cents per mile shall be allowed." The title of the Act is, "an Act to regulate the pay of the Navy of the United States," and considerably increases the pay of all the officers of the Navy. On the part of the United States, the counsel contends that the decision of the Auditor is correct and must be sustained. The point of his argument has been to show, by the true construction of the statute just recited, as applied to the case of the defendant as stated in the agreed facts. The money received by the defendant for the purpose therein stated was without any lawful authority, and ought to be considered as the money of the United States in his hands and improperly withheld. The substance of the learned attorney's argument has been much the same as that of the Auditor, made in the case of Commander G. I. Pendergrast to the Comptroller, which he supposes was a case somewhat similar and stronger than that of the defendant in this case, and the validity of the grounds upon which that claim was disallowed has been recognized by the Navy Department and by committees of Congress. The Auditor's argument in the case is strong and powerful. As to all the cases intended by the act to be embraced within its prohibitions, the argument brings to its support, as the evils intended to be prevented by the law, the antecedent practices which had existed in the Navy Department, in making allowances to Naval officers in addition to their pay; that it appears from the act itself, compared with the previous laws, that it was framed upon the principle of abolishing all such allowances, and limiting the discretion of the Secretary, and of granting a sufficient increase of pay to greatly more than it had been before, to cover all the necessary incidental expenses which had been the subject of those allowances.

That if the payment by the Navy Department of bills for medical attendance and medicine, contracted by a Naval officer for his own personal use and benefit with a private physician or apothecary be *an allowance to the officer*, such payment is prohibited by the act; the term *allowance* used in the law

means the same there that it did in the published rules and regulations of the Department, in force at and before the passage of the act, which was for the expenses incurred by an officer in the employment of a private physician, where no medical officer of the Navy was at hand. It is in the book of regulations classed under the head of "allowances," to whom made, but to the sick officer; further as to which, it is found in an analogy derived from the act itself, as the rent of quarters, a case paralleled in all respects, particularly mentioned as prohibited; as to the ground that the expenses in question might be charged upon the fund formed from the money contributions of the officers and seamen of the Navy. It is sufficient to say that the contributions referred to are expressly confined by the Act of Feb. 26th, 1811, to the erection and support of Naval Hospitals, and the only benefit which the contributors, as such, become entitled to, is the use of those hospitals; as to the usage of the office also urged in support of the claim, if the usage be agreeable to the law its production is useless, and if it be not, it is a custom more honored in the breach than in the observance, and cannot alter the law. It is denied that there is any such usage; so as to an allowance for bills of private physicians for medical attendance upon officers employed on the Coast Survey, this too is an error, only one case allowed, made and passed inadvertently. It is erroneous also to suppose that where officers abroad, in consequence of the absence or disability of a Naval medical officer have employed private physicians to attend them, it has been usual to allow the bills presented for such service, the contrary is the fact; that these observations are, for the most part, applicable also to his purchase of medicine, &c. Comptroller Parris, to whom the foregoing opinion was addressed, "concurred with the 4th Auditor in his able exposition of the grounds on which he disallowed the claim of Commander Pendergrast." It was also urged by the Attorney of the United States that the order made in this case, and for the purpose stated by the Secretary of the Navy was in violation of the law, and not obligatory or binding on the 4th Auditor in the settlement of the defendant's account, to credit

him with said amount according to said voucher produced by him.

He also relied on the Act of 1823, Ch. 9, entitled, "an act concerning the disbursement of public money," to show the authority of the accounting officers of the Treasury, to examine and settle the account of the defendant in this case.

On the part of the defendant, the learned counsel have contended that "the medical attendance of an officer is not such an allowance as was contemplated in the prohibition of the Act of Congress of March 3rd, 1835, but a *necessary supply*, *expense* or *allowance*, under whatsoever name it may be called, which every officer, seaman and marine, by the terms of his service, is entitled to receive from the government" refers to the opinion of Attorney General Toucey, September 28, 1848.

Also to the head of the Bureau of Medicine and Surgery, which after being endorsed with the disapproval of the 4th Auditor, was considered with and acted upon by the Secretary of the Navy. This document which is made a part of the evidence in this case will be more particularly noticed under the last head of this opinion.

2nd. That the order of the Secretary of the Navy is conclusive and not to be upset by the Auditor; to support this position the opinions of Attorney General Berrien, in Parker's case, Vol. 2, 303; Taney, 10th of September, 1831, Tharp's case, same Vol. 464–465; Butler, 26th of March, 1834, Parker's case, same Vol. 625–626; Johnson, 19th of April, 1849, Lassell's case, Vol. 2, 87; Crittenden, 13th of November, 1852, Vol. 5, 630.

3rd. If in error as to the other points yet in disbursing this money, the defendant is by express law released from all responsibility by the Act of Congress of March 3rd, 1849, that the Secretary of the Navy is a commanding officer of the Navy, refers to Attorney-General Crittenden's opinion.

4th. There is no mistake of facts. If there is any mistake, it must be a mistake of law, and money paid under mistake of law, where the facts are all known, cannot be recovered back. The order of Secretary is the order of the President 16 Peters, U. S. *vs.* Eliason; Jones is not a disbursing officer.

Such I think are substantially the grounds of the argument made on each side of the case now before the Court. Before proceeding to consider them, I think it would be proper in order to bring directly and more fully into view the action of the Secretary on the subject, to notice the order of the Navy Department, dated July 17th, 1852, and directed to the defendant, as Lieutenant of the United States Navy, Paris, France. It directs him, on the receipt of it, to regard himself as *on special duty*, for the purpose of collecting such information in relation to the Steam Marine as he might be enable to obtain, and might deem to be of importance to the Government and Navy of the United States. His stay in France, under that order for special duty, might be extended to six months, if he should deem it necessary for the collection of the information in question. He would at the end of that time, or sooner, if he should be prepared with the desired information, return to the United States, and report the result of his researches to the Department. He must keep an account of his traveling expenses, taking vouchers for payments when it could be done, to enable him to certify to the accounting officers the actual expenses incurred on account of travel, this shows the special service by which he was detained in France. Subsequently on 11th day of August, 1852, Thomas Harris, of the Bureau of Medicine and Surgery, Navy Department, in a letter directed to the Secretary says: "In reply to your verbal inquiry, I have the honor to state that no precedent of a claim can be found in this office for the allowance of a claim, such as that presented by Lieutenant Jones of the Navy, to be reimbursed the expenses attending the medical treatment while in Paris. I submit however that the Act of Congress, which is relied upon by the accounting officers of the Treasury, in the rejection of such accounts, does not seem to sustain them in the position they have taken." He then proceeds to take particular notice of the law, and states his reasoning thereon, and comes to the following conclusion. "I think the claim of Lieutenant Jones cannot be referred to either of the heads of "pay," "compensation" or "allowance," and it is believed to be within the legitimate power of the Department to grant." Then follows the action of the Secretary in the following words:

UNITED STATES NAVY DEPARTMENT.

WASHINGTON, Aug. 16, 1852.

MESSRS. BARRING BROTHERS & CO.,
*Temporary Agents United States Navy Department, London.*

GENTLEMEN:

Be pleased to honor the draft of Lieut. Catesby ap. R. Jones, United States Navy for $1,000, and charge the same to this department. A specimen of his signature accompanied letter from this department, under date of 8th of April, 1851.

Very respectfully, your obedient servant,

JOHN P. KENNEDY.

Then follows the letter from the Secretary, dated Navy Department, Washington, Aug. 16, 1852, to defendant, in these words:

SIR:

The Department has issued a letter of credit in your favor upon Messrs. Barring Brothers & Co. (triplicate herewith enclosed) for $1,000.

The Department is induced to place this amount in your hands, to enable you to discharge the expenses attending the injuries received by you in Paris; but it is to be distinctly understood, that should the French Government grant reclamation for the injuries sustained by you, this amount must be returned to the Treasury of the United States.

Very respectfully, your obedient servant,

JOHN P. KENNEDY.

LIEUT. CATESBY AP. R. JONES;
*United States Navy, Paris, France.*

The arguments on the part of the United States have much power and force in them, as to the construction and application of the Act of 1835, Section 2, (before recited) extending its prohibition to special or extra allowances to the officers of the Navy therein named, for expenses incurred by reason of sickness, whether for medical attendance or otherwise, the conclusiveness however of them, it appears to me, must be considered as overcome for various reasons. There

is nothing in the facts or circumstances to show that the increase of pay was for the purpose of meeting expenses of that kind, so peculiar in their nature and necessity, or for any other reason than for the increase or former occasion; so with respect to the antecedent and subsequent practice and usage, there is a material contrariety in the statements.

With respect to the terms used in the statute, the present case can not without the most forced construction be brought within any of the enumerated conditions. The money received was for the special designated purpose contained in the instructions, to which purpose the defendant was bound to apply it. That was neither of the purposes, or in the nature of them, for which no allowance was to be made, as specified in the section. If this case does not fall within any of those expressly enumerated, neither does it within the general language used in the last part of the section, which can include nothing but things of the same species or kind. The case of Commander J. G. Pendergrast is supposed by the Auditor to be somewhat similar to this, but stronger, because he was sick *while on duty*. That case was also disallowed by the Auditor, but afterwards allowed in a report of the Committee on Naval affairs, who concurred in the opinion of Attorney General Toucey. The question in that case was whether in the absence of a surgeon at a Navy Yard, to which an officer is ordered on duty, he is entitled to medical attention, and may employ a private physician at the expense of the Government. Under such circumstances the Attorney General supposes the expense are necessarily incurred, and that the term allowance in the Act of 1835 is inapplicate to the officer. His own words are: "I think the payment of the expense in such a case is not an extra allowance, nor any allowance to the officers or seamen, but the payment of the proper and necessary expense of the vessel or Navy Yard for which it was the duty and intention of the Government to provide." This opinion of the Attorney General and Committee of Congress, certainly show that the terms allowance &c., and the concluding general terms of the Secretary, are not to be considered in the extensive sense claimed for them, by the Auditor, and that the law admits of exceptions, when

as to the supposed parallel case of Quarters, &c.   I think the inference is directly the reverse, and that expressing the one without that of the other, shows it was not intended to be included where necessary, there are also other respectable opinions on the subject directly opposed to the strict construction contended for on the part of the plaintiff.

There is another feature in this case which I think deserves notice, the fund which the Secretary drew was one over which he had control in his official character, for the purposes among others of being disposed of to accomplish such objects and ends as his judgment might be deemed of importance to the Government and Navy of the United States, of course the special service that the defendant was directed to regard himself on, for six months (if necessary) to collect such information in relation to the Steam Marine of France, as he might be enabled to obtain and might deem to be of importance to the Government and Navy of the United States, must be considered to be within the legitimate scope of the special duty.   The defendant was in Paris, and one whom the Secretary could confide in, as most fitting and suitable for this duty, he could receive no pay or compensation for his services, and the afflictive dispensation with which he had most unexpectedly been visited, involved him in the exhaustion of all his pecuniary means; if then it became indispensably necessary to the attainment of the object in view, that a sum of money equal to the purpose of relieving him from the embarrassment should be advanced, and it was so advanced, I think the Secretary had a right so to do.

But if incorrect in the foregoing views, I proceed to consider the next part of the case, that is to say, what effect is to be given to the *order* and action of the Secretary?

The facts according to the agreed statement were all before the Secretary and adjudicated on by him; the result of which judgment, was that the claim now sought to be recovered back, should be received by the defendant from Messrs. Barring Brothers & Co. and applied to the payment and discharge of the expenses attending the injuries received by him in Paris; but with the distinct understanding that should the French Government grant reclamation for the in-

juries sustained by him, said amount so received should be returned to the Treasury of the United States, and this application was made as directed.

It must be borne in mind that the transaction for which the expenditure was incurred, was in the Department of the Secretary of the Navy.

I consider the conclusive, obligatory effect of this order so fully settled by authorities, that there will be no need for any argument by me.

I refer first to the opinion of Attorney General Berrien in the case of Parker, December 4th, 1829. After stating the order in which the business passes through the offices of the accounting officers of the Treasury, to the 2nd Comptroller, he says: "It is his duty to certify the balance arising thereon to the Secretary of War, in whose Department the expenditure was incurred," he proceeds, "Thus far, I should believe that the decision of the 2nd Comptroller was final, not liable to question by any other than the Secretary, acting under the authority of the President; but the Secretary must possess this power, or Congress would not have placed him at the head of the Department of War, to be subjected to the control of a subordinate officer of the Treasury, when the account has been settled and certified to the Secretary, he is then to issue his requisition for its amount, and unless he is a mere machine, or liable to the control of his own, or the subordinates of another Department, he must be entitled before he does so, to review, and if need be to reverse the decision of the Comptroller. If this were not so in the case under consideration, a subordinate officer of the Treasury Department might regulate the military allowances of the army, contrary to the will of the Secretary of War, and of the President of the United States." Vol. 2, p. 203.

On the subject of the successors in office power to open the decision of his predecessor he says: "If it was competent to the late Secretary to prescribe the principles, on which the settlement should be made, it must be competent to his successor when that decision is reported to him to determine whether that principle has been adhered to in settlement of the account;" so in this case the only question open for the

action of the Auditor was, whether the defendant had applied the money as directed by the decision.

So Attorney General Toucey, "An erroneous decision of the officer in favor of the claimant and the payment of the money became conclusive on their successors in office and the Government." Vol. 1, Att'y Gen'l 786; Cooper's Case, Vol. 5, p. 62. So Attorney General Johnson, 2 Vol., 1993; Vol. 5, p. 87. "The opinion of the Secretary of the Interior directing the claim of H. Lassell, for $2224.95, against the Marina Nation of Indians to be paid, is in my judgment binding upon all the subordinate officers by whom the account is to be audited and passed, this has been the practice of the government from its origin, and is as well authorized by the laws organizing the Departments as it is absolutely necessary to the proper operation of the Government. I deem the point so clear that I feel it is to be unnecessary to refer to opinions upon the question given at different times by this office."

Attorney General Butler is to the same effect. To these might be added the various decisions of the Supreme Court, establishing the same principles. I think therefore the law is with the defendant and that judgment ought to be entered for him on the agreed statement of facts.

JAS. S. MORSELL.

The following is the separate opinion of Judge Dunlop: The case agreed shows that the sum of money now sued for by the United States was, by the order of the late Secretary of the Navy, placed in the hands of Lieutenant Jones, with directions to disburse it in a particular way, according to the Secretary's mandate, and that this mandate was strictly complied with by the defendant.

Under these circumstances it seems to me the accounting officers of the Treasury can not legally charge the sum to Lieutenant Jones. Supposing the construction of the Act of 3rd March, 1855, to be as maintained by the 4th Auditor, still I think if the defendant has paid away the money committed to his charge, in faithful compliance with the Secretary's order, which is admitted by the case agreed, the Secretary and not

Lieutenant Jones must account and answer to the United States.

The 2nd Section of the Joint Resolution of the 3rd of March, 1849, is in these words: "and be it further resolved, that every disbursement of public money, or disposal of public stores, made by order of any commanding officer of the Navy, which shall be objected to by the accounting officers of the Treasury, in the settlement of the accounts of any disbursing officer, shall, nevertheless, be allowed to such disbursing officer, and the commanding officer by whose order such disbursement or disposal was made, shall be held accountable for the same, provided that satisfactory evidence of such order, and of the payment of public moneys, or disposal of public stores, under the same, shall be produced."

This case is, I think, in the spirit and meaning of this provision of law.

I am therefore of opinion that the judgment of the Court on the case agreed, ought to be for the defendant, but without costs.                                JAS. DUNLOP.

NOTE.—See U. S. *vs.* Jones, 18 How. 92, affirming the above.